UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHRISTOPHER SILVA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:24-cv-01375-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 16) |

    This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his applications for disability insurance and supplemental security income benefits. The parties have consented to entry of final judgment by the undersigned under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

    Plaintiff argues that the ALJ erred in evaluating thirteen medical opinions. (ECF No. 16, pp. 22-26). And in connection with this argument, Plaintiff contends that the ALJ should have considered a closed period of disability.

    Having reviewed the record, administrative transcript, the parties' briefs, and the applicable law, the Court finds as follows.

\\\

**I.   ANALYSIS**

**A.   Background**

While working as an order picker for Amazon, Plaintiff was injured in December 2018 after a box fell on his back. (A.R. 56, 783). Thereafter, he saw various medical professionals for treatment or evaluation, some of whom issued opinions regarding his abilities. Plaintiff challenges the ALJ's decision to find thirteen medical opinions—issued by three doctors—unpersuasive. He argues that the ALJ improperly deemed the opinions inconsistent with later medical evidence. Relatedly, Plaintiff argues that the ALJ should have considered a closed period of disability.

To better understand Plaintiff's argument, some background information about the challenged opinions and the ALJ's decision is useful.

Of the three doctors at issue in this case, the first is Dr. Mangat, who began treating Plaintiff shortly after his workplace injury and issued eight opinions about his work abilities that span from December 10, 2018, to March 3, 2020. (ECF No. 16, pp. 3-9). Dr. Mangat's opinions vary. For example, Dr. Mangat's December 10, 2018 opinion stated that Plaintiff could lift, push, and pull up to 5 pounds; could not bend, twist, kneel, crawl, or squat; could not climb stairs or ladders; could stand or walk for 10 minute per hour, and should have a "sitting job mainly." (A.R. 520). Dr. Mangat's last opinion on March 3, 2020, permitted Plaintiff to return to modified work with restrictions: Plaintiff could lift, push, and pull up to 15 pounds constantly; could not bend or twist his back and could not kneel; could stand and walk up to 45 minutes per hour, and should be sitting 25% of the time. (A.R. 606).

The second set of medical opinions are from Dr. Foxley, who began treating Plaintiff in April 2020 and issued three opinions about his work abilities that span April 6, 2020, to September 16, 2020. (ECF No. 16, pp. 9-11, 13-15). Dr. Foxley's opinions also vary somewhat. For example, Dr. Foxley's initial opinion (dated April 6, 2020) permitted Plaintiff to return to modified work but restricted him from kneeling, bending, and twisting; limited him to lifting, pushing, pulling, and carrying no more than 15 pounds; and stated that he should remain sitting 25% of the time. (A.R. 601). Dr. Foxley's second opinion (dated July 13, 2020) permitted a return

to work with the following restrictions: no squatting, kneeling, bending, and twisting; Plaintiff could lift 15 pounds constantly, should be sitting 50% of the time, and may stand and walk 30 minutes per hour. (A.R. 762).

The third set of medical opinions are from Dr. Ramirez, who evaluated Plaintiff in connection with a workers' compensation claim and issued two somewhat varying opinions about Plaintiff's work abilities on July 31, 2020, and December 4, 2020. (ECF No. 16, pp. 11-13, 15-16). Dr. Ramirez's first opinion (dated July 31, 2020) stated that Plaintiff could return to work with the following restrictions: no bending or twisting; no climbing of stairs; no lifting, pushing, or pulling of more than 10 pounds, and he could sit 50% of the time. (A.R. 850). The second opinion (dated December 4, 2020) concluded that Plaintiff could return to work with the following restrictions: no lifting over 20 pounds; no repetitive lifting over 10 pounds; no standing or walking over 1 hour; and no sitting over 2 hours without a break. (A.R. 848).

Following Dr. Ramirez's evaluation of Plaintiff, there is a gap in the medical record, until, pertinent here, Dr. Van Kirk conducted a July 16, 2022 consultative examination of Plaintiff. (A.R. 866). Thereafter, there is additional medical evidence in the record, which will be discussed below.

After reviewing all the record evidence—including the opinions from Drs. Mangat, Foxley, and Ramirez and the medical record post-July 2022—the ALJ concluded that Plaintiff had the following residual functional capacity (RFC), which is generally less restrictive than the limitations opined by Drs. Mangat, Foxley, and Ramirez:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally reach overhead bilaterally; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance (balance as defined in the Selected Characteristics of Occupations); can occasionally stoop; can occasionally kneel; can occasionally crouch; can occasionally crawl; and can never be exposed to extreme cold.

(A.R. 21).

In formulating this RFC, the ALJ found the opinions from Drs. Mangat, Foxley, and Ramirez unpersuasive. The ALJ generally found their opinions inconsistent with later medical

evidence, such as normal exam results from Plaintiff's July 16, 2022, consultative exam with Dr. Van Kirk. The following discussion from the ALJ's opinion provides a general overview of the rationale used to formulate the RFC and discount the thirteen opinions:

> The record contains evidence of various impairments, such as spine disorder and shoulder disorder, as noted above. The undersigned accounted for the combination of the claimant's impairments and symptoms, such as pain, decreased range of motion, decreased sensation, and weakness, with the limitations in the above residual functional capacity, which include a limitation to work at the light level with additional postural, environmental, and manipulative limitations. However, the undersigned does not find further limitations are warranted. A July 16, 2022 consultative examination report indicated that on exam, the claimant was in no acute distress, was pleasant, sat comfortably in the examination chair, got up and out of the chair, walked around the examination room, and got on and off the bench without difficulty, had audible, understandable, and sustainable speech, was able to hear conversational volume, had clear chest/lungs to auscultation throughout, had regular cardiovascular rate and rhythm, had a soft, nontender abdomen, had extremities without edema, and had adequate circulation in the upper and lower extremities bilaterally. He had a normal Romberg test, was able to get up on his toes and his heels, did not have an assistive device present, had full range of motion of the cervical region without pain or difficulty, had full range of motion without pain or difficulty on exam of the shoulder, knee, elbow, hip, wrist, and finger/thumb, had 5/5 strength in the bilateral upper and lower extremities, including grip strength, had normal bulk and tone, and had no atrophy noted. He also had a grossly intact sensory exam to light touch and pinprick throughout the bilateral upper and lower extremities (Exhibit 24F). An August 12, 2022 record also indicated that on exam, the claimant had normal range of motion, had normal breath sounds, had normal cardiovascular rate and regular rhythm, and had normal mood and was alert (Exhibit 34F, pages 53-54). Also, an October 3, 2022 record indicated that on exam, the claimant had normal gait, had 5/5 strength in the bilateral upper and lower extremities, had a soft, nontender abdomen, had intact range of motion of the neck, was alert, sat comfortably in the exam room, and was in no acute distress (Exhibit 26F, page 8). Additionally, a September 18, 2023 record indicated that on exam, the claimant was alert, was cooperative, had normal gait, and had no generalized swelling or edema of the extremities (Exhibit 28F, page 41). A December 4, 2020 record also indicated that on exam, the claimant was calm and pleasant, was cooperative, had appropriate affect, had clear lungs, had regular heart rate, did not use an assistive device, had a negative Rhomberg, had normal light touch sensation in the bilateral lower extremities, and had 5/5 strength of the hips, knees, ankles, and toes (Exhibit 20F, pages 13-14). Additionally, a July 16, 2022 consultative examination report indicated the claimant watches television about eight hours per day and reads about an hour per day (Exhibit 24F, page 2). The claimant also testified he drives short distances, goes to the store, plays chess, watches television, reads, is able to read and write

>English, and plays cards (Hearing Testimony). A December 4, 2020 record also indicated that the claimant was instructed he should do yoga (Exhibit 20F, page 24). This evidence is consistent with a finding the claimant retained the functional abilities in the above residual functional capacity.

(A.R. 33-34). The ALJ also summarized and assessed each of these medical opinions individually.

With this background in mind, Plaintiff argues that the ALJ should not have relied on post-December 2020 evidence to determine that the opinions of Drs. Mangat, Foxley, and Ramirez were inconsistent with such evidence. (ECF No. 16, pp. 23-24).

Additionally, Plaintiff argues in his motion for summary judgment that the ALJ erred in evaluating the medical opinions by failing to discuss certain consistent medical evidence. (ECF No. 16, pp. 24-25).

Although Plaintiff's motion for summary judgment does not explicitly argue that the ALJ failed to consider a closed disability period, Defendant's opposition construes such an argument and opposes it (ECF No. 17, p. 15), and Plaintiff's reply requests "[a] remand for further administrative proceedings to properly consider the medical opinions of Drs. [Mangat], Foxley, and Ramirez is warranted, *including whether Mr. Silva was disabled for a closed period during the period beginning December 9, 2018.*" (ECF No. 18, p. 6) (emphasis added).

Defendant argues that the ALJ properly relied on later medical evidence (among other reasons) to discount the opinions of Drs. Mangat, Foxley, and Ramirez. (ECF No. 17, pp. 11-18). Further, Defendant contends that the evidence, which Plaintiff asserts the ALJ failed to consider in evaluating the medical opinions, was in fact considered or not probative. (*Id.* at 18-20). Lastly, Defendant argues that a closed period of disability is not warranted. (*Id.* at 15).

**B.     Legal Standards for Medical Opinions**

Plaintiff's primary challenge is to the ALJ's evaluation of the opinions of Drs. Mangat, Foxley, and Ramirez.

Because Plaintiff applied for benefits in 2022, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 17). These regulations set "supportability" and

"consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

### C. Medical Opinions

#### 1. Post-December 2020 records

Beginning with the ALJ's decision to find the opinions of Drs. Mangat, Foxley, and Ramirez unpersuasive, Plaintiff argues that the ALJ erred by relying on post-December 2020 medical records. (ECF No. 16, p. 24). Plaintiff relies on the Ninth Circuit's decision in *Smith v. Kijakazi*, 14 F.4th 1108 (9th Cir. 2021). In that case, which was decided when the specific-and-legitimate reasons standard (not applicable here) applied, the Ninth Circuit concluded that it was error to discount medical opinions concerning mental health symptoms—which are known to vary in severity—based on later medical opinion of improvement:

> But we have previously observed that in many mental health conditions, "[c]ycles of improvement and debilitating symptoms are a common occurrence." *Garrison*, 759 F.3d at 1017. We therefore held that "in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement ... and to treat them as a basis for concluding a claimant is capable of working." *Id.* Physician reports of "improvement" are thus not "sufficient to undermine the repeated diagnosis of [the alleged mental health] conditions" in an earlier physician's report or render the earlier medical opinions "inconsistent" and so not credible. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200–1201 (9th Cir. 2008).

(*Id.* at 1115-16).

The parties debate whether *Smith* is applicable to claims of physical impairment, with Defendant citing caselaw concluding that *Smith* does not (or may not apply) to physical impairments (ECF No. 17, p. 16), and Plaintiff citing caselaw that it does apply to physical impairments (ECF No. 18, p. 3).

Ultimately, the Court finds that that the relevance of post-opinion medical evidence does not turn, in this case, on whether the impairment is mental or physical, but rather whether there is evidence that Plaintiff's impairment changed over time. After all, *Smith* relied on a line of caselaw noting the broader proposition that the treatment record must be evaluated in its entire context. 14 F.4th at1115 (citing *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (relying on cases noting that medical opinions and reports of improvement must be evaluated in the context of the overall record).

Thus, in deciding whether the ALJ erred in considering post-December 2020 records to

evaluate earlier medical opinions, the Court looks to whether Plaintiff in this case has presented evidence that his condition changed, and in particular improved, after the initial medical opinions were given.

While Plaintiff argues that subsequent medical records only "pertain[] to Plaintiff's functionality since July 2022 (the date of the earliest examination relied upon by the ALJ)" and "say[] nothing about Mr. Silva's ability to work prior to that date," (ECF No. 16, at p. 23-24), Plaintiff does not claim that his condition changed or improved over this time. Nor does Plaintiff point to any evidence in the record that his condition changed. Even after the Commissioner argued in opposition that Plaintiff failed to claim any improvement between the earlier medical opinions and the later medical records (ECF No. 17, at p. 16) ("Plaintiff fails to show a significant change in his condition from before and after December 2020"), Plaintiff's reply brief still fails to point to any change in Plaintiff's condition over this time period. (ECF No. 18, at p. 3).

On the contrary, the record indicates that Plaintiff claimed that his condition was "continuing," and not improving. For example, as Plaintiff's brief notes, on February 6, 2024, he visited a pain management specialist and "reported continuing, severe, pain in his low back that radiated to his hips and legs, along with pain in his upper back" and "reported past treatments of physical therapy, chiropractic sessions, and epidural injections had provided only temporary relief, if any." (ECF No. 16, p. 18) (citing A.R. 1226). Notably, this record described the pain as "chronic," "constant" and "a severity / intensity level of 10 out of 10." (A.R. 1226).

Nor did Plaintiff claim at the hearing conducted before the ALJ that his condition had changed or improved over time. On the contrary, when asked why Plaintiff had not looked for any jobs after leaving Amazon, Plaintiff stated "Because I'm in pain. I'm hurt. I can't even stand up and walk for no more than 12 to 15 minutes." (A.R. 58). He went on to describe how previous treatments had failed to work. (A.R. 59). Nowhere did he say that his condition had changed or materially improved since his workplace injury in December 2018.

Likewise, in his May 23, 2022, exertion questionnaire, Plaintiff stated that he could "only stand or walk up to 15 minutes before [his] back and hips and groin area become painful where [he] need[s] to sit." (A.R. 299). When asked what types of things he was able to lift, Plaintiff

responded that he could lift his coffee cup and dish to put it in the sink and his clothes to give to his wife to dress him. (A.R. 300). In short, Plaintiff has, until recently, asserted that he was disabled through an ongoing period of time, not that he improved post-December 2020.

Thus, given that Plaintiff claimed, and the evidence indicated, that Plaintiff's condition had been substantially similar before December 2020 as after that time, the ALJ did not err in evaluating whether the earlier doctors' opinions were consisted with later medical records.

Lastly, as Defendant notes, besides discounting the opinions of Drs. Mangat, Foxley, and Ramirez as being inconsistent with post-December 2020 records, the ALJ also rejected them for other varying reasons, which Plaintiff does not challenge. (ECF No. 17, p. 11). For example, the ALJ discounted Dr. Foxley's opinion, in part, because Foxley's own exam, dated July 13, 2020, "showed independent gait and normal range of motion and muscle tone for age." (A.R. 32) (citing A.R. 1070). Similarly, the ALJ noted that "Dr. Mangat indicated that on exam, the claimant had tenderness present in level L4-L5 of the lumbar spine, and had slow gait; however, Dr. Mangat also indicated that on exam, the claimant was well appearing, was in no acute distress, sat on a chair, had no apparent distress appreciated, which does not support her opinion." (A.R. 26).

Additionally, the Court notes that the RFC was formulated, in part, based on the ALJ's review of Dr. Van Kirk's July 16, 2020 opinion, which the ALJ deemed partially persuasive. (A.R. 24). The ALJ concluded as follows:

> The opinion is supported by the findings by this provider that the claimant had extremities without edema, had adequate circulation in the upper and lower extremities bilaterally, had a normal Romberg test, was able to get up on his toes and his heels, did not have an assistive device present, had full range of motion of the cervical region without pain or difficulty, had full range of motion without pain or difficulty on exam of the shoulder, knee, elbow, hip, wrist, and finger/thumb, had 5/5 strength in the bilateral upper and lower extremities, including grip strength, had normal bulk and tone, had no atrophy noted, and had a grossly intact sensory exam to light touch and pinprick throughout the bilateral upper and lower extremities[.]

(A.R. 24).

Lastly, the ALJ also relied on earlier records, in formulating the RFC, *e.g.*, the ALJ cited "[a][ December 4, 2020 record also indicated that on exam, the claimant was calm and pleasant,

was cooperative, . . . did not use an assistive device, had a negative Rhomberg, had normal light touch sensation in the bilateral lower extremities, and had 5/5 strength of the hips, knees, ankles, and toes." (A.R. 34).

In short, the Court finds no legal error in the ALJ considering post-December 2020 records to evaluate the opinions of Drs. Mangat, Foxley, and Ramirez.

### 2. Failure to consider probative evidence

Additionally, Plaintiff argues that the ALJ failed to consider certain probative evidence that he contends was consistent with the opinions of Drs. Mangat, Foxley, and Ramirez.

> For instance, pain management specialist Dr. Salazar's examination on May 6, 2019 found Mr. Silva's range of motion in his lumbar spine reduced in all positions and tender facet joints on both side of the lumbar spine at L4 and L5 for which he recommended a medial branch injections and radiofrequency nerve ablation. (AR 388-389, 391) On August 8, 2019, Dr. Salazar's examination noted Mr. Silva's lumbar range of motion was even further reduced and that the injection only improved the pain for a matter of hours. (AR 380, 381, 400) Similarly, an examination by Sierra Pacific Orthopedics on July 16, 2020 noted Mr. Silva's "severe pain and dysfunction", and clinical findings of positive straight leg raise testing bilaterally, tender trigger points in the lumbar paraspinal muscles, and decreased strength and sensation. (AR 619, 620) X-rays taken that day were noted to show "severe neural foraminal narrowing at L5-S1 and moderate to severe neural foraminal narrowing at L4-L5" as well as severe facet arthropathy at L4- L5 and L5-S1. (AR 619) The ALJ's failure to consider such evidence in an evaluation of the consistency of the medical opinions of Drs. Ramirez, Foxley, and Mangat constitutes legal error. *See*, *Vincent,* 739 F.2d at 1395.

(ECF No. 16, pp. 24-25).

Defendant argues that this evidence was considered or was otherwise not probative. (ECF No. 17, p. 18). The Court agrees.

> To engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis. But at the same time, a rule requiring ALJs to address every argument or piece of evidence, however meritless or immaterial, would unduly detain ALJs in their orderly consideration of Social Security disability benefits claims.

*Kilpatrick*, 35 F.4th at 1193.

First, as to Dr. Salazar's notes, the ALJ discussed them in multiple portions of the record. (A.R. 20, 22, 29). While the ALJ did not explicitly address these notes in conjunction with the

consistency analysis of the thirteen opinions at issue, the ALJ was under no duty to do so. As explained above, an ALJ need not discuss every single piece of evidence in the decision. The ALJ otherwise considered the records when determining whether Plaintiff was disabled and sufficiently explained why, for multiple reasons, it was proper to discount the opinions of Drs. Mangat, Foxley, and Ramirez.

Second, as to the Sierra Pacific Orthopedic records, the Commissioner argues that they supported the ALJ's opinion or were not relevant, as follows:

> Sierra Pacific Orthopedics' positive test result (AR 619) was not consistent with the negative test results stated in Dr. Ramirez's 2020 and Dr. Foxley's 2018 reports. *See* AR 829-30 (Dr. Ramirez's July 2020 findings); AR 787 (Dr. Ramirez's December 2020); AR 514 (Dr. Mangat's 2018 findings). Indeed, Dr. Foxley's June 2020 note found Plaintiff was in no acute distress and had normal range of motion and muscle tone for age (AR 27, citing AR 1056). In addition, Sierra Pacific Orthopedics' X-ray report stated "severe neural foraminal narrowing at L5-S1 and moderate to severe neural foraminal narrowing at L4-L5" as well as severe facet arthropathy at L4-L5 and L5-S1 (AR 619-20). However, Dr. Ramirez's report indicated March 2019 MRI findings that were "negative for moderate or severe central canal stenosis, negative for neural foraminal impingement, facet osteoarthritic changes, which were moderate in degree particularly at L5-S1 and slightly lesser extent at L4-L5 (findings also noted broad based disc bulge at L5-S1 with small annular fissure)" (AR 835; see AR 24, 25, citing AR 835). Hence, the ALJ reasonably did not discuss the Sierra Pacific Orthopedics records because they lacked consistency with the findings of Drs. Mangat, Foxley, and Ramirez.

(ECF No. 17, pp. 19-20). Plaintiff fails to provide a specific response to this argument, instead, broadly asserting that the records "are consistent with the July 2020 opinions of Drs. Foxley and Ramirez . . . . ." (ECF No. 18, pp. 5-6). The Court thus concludes that "there is no basis to conclude that these results qualified as significant probative evidence that the ALJ was required specifically to address." *Kilpatrick*, 35 F.4th at 1194.

### D. Closed Period of Disability

Plaintiff argues in his reply that "remand for further administrative proceedings to properly consider the medical opinions of Drs. Magnet, Foxley, and Ramirez is warranted, including whether Mr. Silva was disabled for a closed period during the period beginning December 9, 2018." (ECF No. 18, p. 6). Plaintiff does not specify when the closed period should

end or why a closed period is warranted. Further, from the Court's review of the record, it does not appear that Plaintiff ever argued for a closed period below.

In response, Defendant argues that Plaintiff fails to show a significant change in his condition to warrant a closed disability period; rather, Plaintiff has consistently argued ongoing disability. (ECF No. 17, p. 16).

Under the relevant regulations, a person is disabled if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). Because a person can be considered disabled for a continuous period of not less than 12 months, their disability does not have to be perpetual for the ALJ to award benefits; rather, in "a so-called closed period case," the ALJ may find that a person "had been disabled for a closed period of time and had since medically improved." *Attmore v. Colvin*, 827 F.3d 872, 876 (9th Cir. 2016).

However, as discussed above in addressing Plaintiff's medical-opinion arguments, Plaintiff has not established that his condition materially improved in a way that would warrant a closed period of disability. Instead, Plaintiff has consistently maintained that even after December 2020, he is disabled, including in a 2024 record where he reported chronic and constant low back pain. (A.R. 1226). The fact that earlier medical opinions found greater limitations than later opinions and records is not itself a basis for finding a closed period of disability.

## II.     CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.
IT IS SO ORDERED.

Dated:   **June 24, 2025**                              /s/ Erica P. Grosjean
                                                                    UNITED STATES MAGISTRATE JUDGE